UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ERIC MARADIAGA, #301085, ) | Civil Action No. 4:05-2836-PMD-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | **REPORT AND RECOMMENDATION** |
| ) | |
| ) | |
| DARREN WILSON, Highway Patrolman, ) | |
| and DAVID THOMLEY, Captain and ) | |
| Highway Patrolman, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**I.     INTRODUCTION**

Plaintiff, proceeding pro se, brings this case pursuant to 42 U.S.C. § 1983, alleging unlawful use of excessive force.  Plaintiff is presently an inmate in the custody of the South Carolina Department of Corrections (SCDC) at the Broad River Correctional Institution (BRCI), although he was not incarcerated at the time of the events alleged in the action. On December 11, 2006, Plaintiff filed a Motion for Summary Judgment (Document # 30).  Defendant David Thomley filed a Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (Document # 37) on February 15, 2007.  Defendant Darren Wilson filed a Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (Document # 39) on February 15, 2007.  The undersigned issued an Order, filed February 20, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the Motions for Summary Judgment and the possible consequences if he failed to respond adequately.   Plaintiff filed a Response (Document # 48) to

both Defendants' Motions on May 4, 2007.¹ All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because these are dispositive motions, this report and recommendation is entered for review by the district judge.

## II.    FACTUAL HISTORY

The following factual recitation is gathered from a Kershaw County Sheriff's Office Investigative Report, drafted by Defendant Captain David Thomley, a Captain with the Kershaw County Sheriff's Office, on December 28, 2003, which is attached as Exhibit A to Thomley's Affidavit:

On December 27, 2003, Sergeant James Sinkler of the South Carolina Highway Patrol initiated a vehicle traffic stop in Kershaw County. Ex. A to Thomley Affidavit. As Sinkler approached the vehicle, the driver (now known to be Plaintiff), fired a handgun at Sinkler at close range. Id. Sinkler was struck in the left hand and torso (Sinkler was wearing a bullet proof vest). Id. After being shot, Sinkler retreated for cover. Id. Plaintiff then opened his driver's side door and pointed his weapon at Sinkler. Id. Sinkler advised Plaintiff to stay in the vehicle. Id. Plaintiff was still pointing his weapon at Sinkler, so Sinkler fired one shot at Plaintiff, but did not hit him. Id. Sinkler then took cover and awaited assistance from responding units. Id. Plaintiff then fired a second shot in the direction of Sinkler, exited his vehicle, approached Sinkler's vehicle and fired two additional shots. Id.

Defendant Trooper Darren Wilson arrived on the scene at that time. Id. Plaintiff confronted Wilson with a gun to his own head, stating, "I'll do it, I'll do it." Id. Wilson instructed Plaintiff to

---

¹All parties moved for and were granted extensions of time to respond to the motions.

drop his weapon. Id. Plaintiff did not comply and then raised and pointed his gun at Wilson. Id. At that time, Wilson fired seven rounds at Plaintiff, striking Plaintiff multiple times. Id. At least one shot struck Plaintiff in the face. Id. Wilson then began assisting Sinkler, when Sinkler noticed Plaintiff was moving but still on the ground. Id. Wilson then placed handcuffs on Plaintiff. Id.

Wilson avers as follows regarding the above events:

5. . . . I heard on my radio Sergeant Sinkler initiate a stop on a car that had almost hit him head on;
6. Less than two (2) minutes later, I heard Sergeant Sinkler put out a broadcast that he had been shot;
7. I immediately responded to the scene to aid Sergeant Sinkler.
8. Upon arrival, I saw Sergeant Sinkler on the left shoulder of the road approximately fifty (50) yards behind his car;
9. It appeared to me Sergeant Sinkler was creating distance between himself and the assailant as we are instructed to do in the event we are shot;
10. I slammed on my brakes, exited by car, and moved to the front of the car;
11. I observed a man later identified as Plaintiff at my right rear bumper with a silver gun pointed at his head stating, "I'll do it. I'll do it;"
12. I instructed Plaintiff more than once to drop/put down the gun;
13. Plaintiff did not comply, and almost immediately after my warnings, Plaintiff turned the gun away from his head and pointed the gun toward me;
14. The Plaintiff had the opportunity to kill me, and fearing my life was in jeopardy, I opened fire on Plaintiff until he fell to the ground;
15. I immediately went to Plaintiff and kicked his gun away from and out of his reach;
16. By this time, Sergeant Sinkler had made his way back to my car, at which point I immediately began to assist Sergeant Sinkler with his injuries;
17. As I tended to Sergeant Sinkler, he alerted me that Plaintiff was moving, and I turned and observed Plaintiff on all fours in an apparent attempt to pick himself up off the ground;
18. I put a foot on Plaintiff's back, pushed him back to the ground, handcuffed him, and then put his gun in the passenger floorboard of my patrol car.

Wilson Aff. at ¶¶ 5-18.

Wilson also submits a DVD in support of his motion. Ex. B to Wilson's Motion. The DVD contains footage captured by the in-car cameras of Sinkler and Wilson. Id. The footage from

Sinkler's in-car camera shows Plaintiff shoot Sinkler and Sinkler retreat to somewhere off camera. Id. Sinkler tells Plaintiff to get back in the car and a shot is fired. Id. Plaintiff then shoots in Sinkler's direction from his vehicle. Id. Plaintiff exits his vehicle with the gun in his hand and walks towards Sinkler's vehicle. Id. However, Plaintiff then moves outside the view of the camera. Id. Two more shots are fired. Id. Wilson then arrives on the scene although, he, too, is outside the view of the camera. Id. Sinkler says, "shoot him, Darren, shoot him, Darren." Id. Plaintiff is heard saying "I'll do it, I'll do it." Id. Wilson tells Plaintiff to "drop the gun" and then seven shots are fired. Id. Plaintiff is also outside the view of Wilson's in-car camera, but Wilson is not. Id.

In his verified Complaint, Plaintiff avers that "while arresting Plaintiff, South Carolina Highway Patrolman Darren Wilson did shoot the Plaintiff 7 times (once in the back as plaintiff lay injured on the ground), for no lawful reason." Complaint. "I in no way resist Highway Patrolman Wilson's attempt to arrest me. He just got out of his car and started shooting me. He made no attempt to do anything in the form of verbal communications with me he just started shooting without saying anything to me." Id.

In his Motion for Summary Judgment, Plaintiff admits that he shot Sinkler, but asserts that he had the gun pointed at his own head when Wilson arrived on the scene and not at Wilson. Plaintiff's Motion at 5. Plaintiff further asserts that he suffered seven different gunshot wounds, including one in his back, and a broken jaw and lost his left eye. Id. He states, "the loss of the eye and the broken jaw are not believed to be caused by gun shot." Id. Plaintiff cites to several documents, including a report written by Wilson on the night of the accident, a chain of custody report dated January 14, 2004, and a report written by Sinkler, which he fails to attach to his motion. However, Plaintiff does attach the chain of custody form to his Response to Defendants' Motions

for Summary Judgment. Ex. A to Plaintiff's Response. The chain of custody form lists the incident date as January 14, 2004, and states "bullet removed from patient's back." Id. Plaintiff also attaches medical records from Palmetto Health Richland Hospital. Ex. B to Plaintiff's Response. Plaintiff's "Admission Diagnosis" on December 27, 2003, is "multiple gunshot wounds neck/shoulder, abdomen, forearm." Id. The records also reveal that Plaintiff suffered multiple fractures to his face. Id. According to Plaintiff, this "prove without a doubt plaintiff was assaulted after being shot." Plaintiff's Response at 9.

In addition to chain of custody form and the medical records, Plaintiff refers to Incident/Investigation Report Kershaw County Sheriff's Office, South Carolina Highway Patrol Reports, Affidavits of David Thomley and Darren Wilson, EMS Reports, SLED Reports, but fails to attach any of these documents to his Response.[2]

Plaintiff claims that Wilson violated his constitutional rights by his use of excessive force on the night of December 27, 2003. Plaintiff further claims that Thomley is also liable for the violation of his rights under the theory of supervisory liability.

### III.   STANDARD OF REVIEW

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the

---

[2] The Kershaw County Sheriff's Office Investigative Report and the Affidavits of Thomley and Wilson were attached by Defendants to their Motions.

pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

### III.    DISCUSSION

#### A.    Excessive Force Claim

Protection against force during arrest is provided by the Fourth Amendment.  Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  All claims of use of excessive force during an investigatory stop or arrest or other seizures are governed by the Fourth Amendment's

"objective reasonableness" standard. Id. The test for excessive force in arrest context requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governments interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The standard for measuring reasonableness of arrest is wholly objective. The objective reasonableness test requires careful attention to circumstances of a particular case, including severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396, Foote v. Dunagan, 33 F.3d 445 (4th Cir.1994). The focus is on reasonableness at the moment, recognizing that officers are often faced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. Graham, 490 U.S. at 396. An officer may use deadly force if the officer has probable cause to believe the suspect poses significant threat of death or serious bodily injury to the officer or others. Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

     In the present case, it is undisputed that Plaintiff shot Sinkler as soon as he approached his vehicle. It is further undisputed that he fired another shot in Sinkler's direction and then exited his vehicle and moved towards Sinkler before firing two more shots. In fact, the third shot was fired only moments before Wilson arrived at the scene. Wilson was aware that Plaintiff shot Sinkler because of Sinkler's broadcast that he had been shot. When Wilson arrived, Plaintiff still had the gun in his hand. Even viewing the facts in the light most favorable to Plaintiff and assuming Plaintiff did not point the gun at Wilson, the fact that Plaintiff still had the gun in his hand and had used the gun moments before to shoot Sinkler provided Wilson with probable cause to believe that Plaintiff posed a significant threat of death or serious bodily injury to Wilson or Sinkler or others.

Probable cause has been found in less threatening circumstances.   See, e.g., Anderson v. Russell, 247 F.3d 125, 130 (4th Cir.2001) ( no excessive force where officer, who "reasonably perceived" plaintiff to be armed with a gun, shot plaintiff even though it was later determined that plaintiff was unarmed); McLenagan v. Karnes, 27 F.3d 1002, 1007 (4th Cir.1994) (no excessive force for shooting plaintiff where officer "reasonably believed" that another officer saw gun in plaintiff's hands, and "could not confirm" that plaintiff was unarmed).

     Wilson asserts that he shot Plaintiff until he fell to the ground.  Plaintiff claims that Wilson shot him once in his back while he lay injured on the ground.  Even assuming Plaintiff's claim to be true, Wilson's justification for using deadly force against Plaintiff did not end when Plaintiff fell to the ground.  In Estate of Rodgers ex rel. Rodgers v. Smith, 188 Fed.Appx. 175, 183 (4th Cir. 2006), the Fourth Circuit held that the justification for use of deadly force against an armed suspect did not end when the suspect fell to the ground with his arms in the vicinity of his waist, where there was no evidence that the officer knew that the suspect had dropped his weapon.  In Rodgers, only two seconds elapsed between time when the suspect fell and when the officer fired the additional shots to ensure the neutralization of a deadly threat.  Id.  In the present case, the video footage reveals that approximately two seconds passed between the sixth and seventh shots fired by Wilson.  As was the case in Rodgers, nothing in the record indicates that Wilson knew that Plaintiff had dropped his weapon or that Plaintiff was no longer a threat.

     Furthermore, the fact that Wilson fired multiple shots does not render the use of force excessive.  In Elliott v. Leavitt, 99 F.3d 640 (4th Cir.1996), the Fourth Circuit assessed the reasonableness of the use of deadly force by police officers who observed the suspect, already in handcuffs in the back of a police cruiser, pointing a firearm at them.  Id. at 641-642.  The officers

then fired 22 shots in a matter of seconds, killing the suspect. Id. The court rejected the contention that the number of shots fired rendered the use of force excessive, noting that the shooting took place in a matter of seconds. Id. at 643. "That multiple shots were fired does not suggest the officers shot mindlessly as much as it indicates that they sought to ensure the elimination of a deadly threat." Id. Thus, in the present case, the fact that Wilson fired seven shots in a matter of seconds does not mean that his use of force was excessive.

In sum, the undersigned finds that Wilson's actions were objectively reasonable in light of the circumstances known to him at the time of the shooting. Thus, Wilson's motion for summary judgment should be granted.

### B.     Supervisory Liability Claim

Plaintiff asserts that Thomley is liable for the violation of his rights under the theory of supervisory liability for his failure to train and supervise Wilson.

To establish supervisory liability under § 1983, a plaintiff must show that (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir.1990).

In the present case, Thomley avers that he has been a full-time police officer for the Kershaw County Sheriff's office since 1990 and has served as Captain since 1997, he has never been employed with the South Carolina Highway Patrol, he has never trained any officers of the South

Carolina Highway Patrol, he has never worked with Wilson in any capacity, and he had never met Wilson until the date of this incident. Thomley Aff. at ¶¶ 3-8. Thomley further avers that he has never had any supervisory authority over any officer with the South Carolina Highway Patrol. Id. at ¶ 9. Wilson avers in his affidavit that is an employee of the South Carolina Highway Patrol and was so at the time of the incident in question, and that he has never received any training from or been supervised by Thomley. Wilson Aff. at ¶¶ 1, 23.

In light of fact that Thomley has never had any supervisory authority over Wilson, Plaintiff's claim against Thomley fails and Thomley's Motion for Summary Judgment should be granted.

## V.     CONCLUSION

For the reasons set forth above, it is recommended that Plaintiff's Motion for Summary Judgment (Document # 30) be denied; Defendant Thomley's Motion for Summary Judgment (Document # 37) be granted; and Defendant Wilson's Motion for Summary Judgment (Document # 39) be granted.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 14, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**