IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ERIC MARADIAGA, #301085,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | C.A. No.:4:05-2836-PMD-TER |
| ) | |
| DARREN WILSON, Highway Patrolman,    ) | |
| and DAVID THOMLEY, Captain and    ) | **ORDER** |
| Highway Patrolman,    ) | |
| ) | |
| Defendants.    ) | |
| _____) | |

      This matter is before the court upon the Magistrate Judge's recommendation that (1) Defendant Darren Wilson's ("Wilson") Motion for Summary Judgment be granted, (2) Defendant David Thomley's ("Thomley") Motion for Summary Judgment be granted, and (3) Plaintiff Eric Maradiaga's ("Plaintiff") Motion for Summary Judgment be denied. The Record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge which was made in accordance with 28 U.S.C. § 636(b)(1)(B). A dissatisfied party may object, in writing, to an R&R within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Plaintiff filed timely objections to the R&R.

## BACKGROUND

      Although the Magistrate Judge thoroughly reviewed the facts, for the sake of completeness, the court includes them herein:

      Plaintiff, who is proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging unlawful use of excessive force. Plaintiff is currently an inmate in the custody of the South Carolina Department of Corrections ("SCDC"), though he was not incarcerated at the time of the events

1

giving rise to this cause of action.

On December 27, 2003, Sergeant James Sinkler ("Sinkler") of the South Carolina Highway Patrol initiated a vehicle traffic stop in Kershaw County. According to a Kershaw County Sheriff's Office Investigative Report, drafted by Thomley, a Captain with the Kershaw County Sheriff's Office, the following occurred during the traffic stop:

Sinkler approached the stopped vehicle, and the driver, now known to be Plaintiff, fired a handgun at Sinkler at close range. (Thomley Aff. Ex. A.) Sinkler was struck in the left hand and torso but was wearing a bullet proof vest. (*Id.*) After being shot, Sinkler retreated for cover. (*Id.*) Plaintiff then opened his driver's side door and pointed his weapon at Sinkler, at which point Sinkler advised Plaintiff to stay in his vehicle. (*Id.*) Plaintiff was still pointing his weapon at Sinkler, so Sinkler fired one shot at Plaintiff but did not hit him. (*Id.*) Sinkler then took cover and waited for assistance from responding units. (*Id.*) Plaintiff then fired a second shot in Sinkler's direction, exited his vehicle, approached Sinkler's patrol unit, and fired two additional shots. (*Id.*)

According to the Report, Wilson then arrived on the scene, and Plaintiff pointed the gun to his own head, stating, "I'll do it, I'll do it." (*Id.*) Wilson instructed Plaintiff to drop his weapon, but Plaintiff did not comply, instead raising and pointing his weapon at Wilson. (*Id.*) Trooper Wilson then fired seven rounds at Plaintiff, striking Plaintiff multiple times including one shot in the face. (*Id.*) Wilson then began assisting Sinkler, but Sinkler observed that Plaintiff was still moving. (*Id.*) At that time, Wilson placed handcuffs on Plaintiff. (*Id.*)

In support of his Motion for Summary Judgment, Wilson submits his affidavit, which states,

5.     . . . I heard on my radio Sergeant Sinkler initiate a stop on a car that had almost hit him head on;
6.     Less than (2) minutes later, I heard Sergeant Sinkler put out a broadcast that he had been shot;

> 7.    I immediately responded to the scene to aid Sergeant Sinkler;
> 8.    Upon arrival, I saw Sergeant Sinkler on the left shoulder of the road approximately fifty (50) yards behind his car;
> 9.    It appeared to me Sergeant Sinkler was creating distance between himself and the assailant as we are instructed to do in the event we are shot;
> 10.   I slammed on my brakes, exited my car, and moved to the front of my car;
> 11.   I observed a man later identified as Plaintiff at my right rear bumper with a silver gun pointed at his head stating, "I'll do it. I'll do it.";
> 12.   I instructed Plaintiff more than once to drop/put down the gun;
> 13.   Plaintiff did not comply, and almost immediately after my warnings, Plaintiff turned the gun away from his head and pointed the gun toward me;
> 14.   The Plaintiff had the opportunity and ability to kill me, and fearing my life was in jeopardy, I opened fire on Plaintiff until he fell to the ground;
> 15.   I immediately went to Plaintiff and kicked his gun away from and out of his reach;
> 16.   By this time, Sergeant Sinkler had made his way back to my car, at which point I immediately began to assist Sergeant Sinkler with his injuries;
> 17.   As I tended to Sergeant Sinkler, he alerted me that Plaintiff was moving, and I turned and observed Plaintiff on all fours in an apparent attempt to pick himself up off the ground;
> 18.   I put a foot on Plaintiff's back, pushed him back to the ground, handcuffed him, and then put his gun in the passenger floorboard of my patrol car.

(Wilson Aff. ¶¶ 5-18.)

Wilson also submits a DVD in support of his Motion for Summary Judgment, and the DVD contains footage captured by Sinkler's in-car camera. (*See* Wilson's Mot. for Summ. J. Ex. B.) The footage shows Plaintiff shoot Sinkler and Sinkler's retreat to somewhere off camera. (*Id.*) After Sinkler is no longer visible on camera, he can be heard stating that he has been shot. (*Id.*) From his vehicle, Plaintiff then fires two shots in Sinkler's direction. (*Id.*) Next Plaintiff gets out of his car, walking towards Sinkler's vehicle. (*Id.*) Plaintiff moves outside the view of the camera, and two more shots are fired. (*Id.*) Wilson then arrives on the scene, although he is also out of the view of the camera. (*Id.*) Sinkler says, "Shoot him, Darren, shoot him!" (*Id.*) Wilson tells Plaintiff to drop the gun, and then seven shots are fired. (*Id.*)

In his verified Complaint, Plaintiff states, "While arresting Plaintiff, South Carolina Highway

3

Patrolman Darren Wilson, did sho[o]t the Plaintiff 7 times, (once in the back as Plaintiff lay injured on the ground), for no lawful reason." (Compl. at 3.) Plaintiff further states, "I in no way resist Highway Patrolman Wilson's attempt to arrest me. He just got out of his car and started shooting me. He made no attempt to do anything in the form of verbal communications with me he just started shooting without saying anything to me." (*Id.*) In his Memorandum in Support of his Motion for Summary Judgment, Plaintiff admits to shooting Sinkler but asserts that at the time Wilson arrived at the scene, Plaintiff had the gun pointed at his own head, not at Wilson. (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 5.) Although Plaintiff did not submit any evidence along with his Motion for Summary Judgment, when he responded to the Defendants' Motions for Summary Judgment, he attached two exhibits. (*See* Pl.'s Resp. in Opp'n [48].) Exhibit A is a copy of a Forensic Services Laboratory Report of the South Carolina Law Enforcement Division. (*See* Pl.'s Resp. in Opp'n Ex. A.) The chain of custody form therein indicates that a bullet was removed from Plaintiff's back, specifically from the "R Flank/Back area." (*Id.*) Exhibit B contains medical records from Palmetto Health Richland. (*See* Pl.'s Resp. in Opp'n Ex. B.) The "admission diagnosis" is "[m]ultiple gunshot wounds [to the] neck/shoulder, abdomen, [and] forearm." (*Id.*) The records further state that Plaintiff "had gunshot wounds to his abdomen, neck, orbit and forearm, per old notes." (*Id.*) The records also indicate that Plaintiff suffered multiple fractures to his face. (*Id.*) According to Plaintiff, the records "prove without a doubt Plaintiff was assaulted after being shot by Darren Wilson, while in custody." (Pl.'s Resp. in Opp'n at 9.)[1]

---

[1] As the Magistrate Judge noted, Plaintiff refers to several documents that are not in the record. For example, he refers to the transcript of his deposition, but the transcript is not part of the record. (*See* Pl.'s Resp. in Opp'n at 4.) Plaintiff also seeks to incorporate by reference the following: "Incident/Investigation Report Kershaw County Sheriff's Office, South Carolina Highway Patrol Reports, Affidavits of David Thomley and Darren Wilson, EMS reports, SLED

In his § 1983 action, Plaintiff asserts that Wilson violated his constitutional rights by using excessive force on the night of December 27, 2003. Plaintiff further claims that Thomley is also liable for the violation of his rights pursuant to the theory of supervisory liability. On December 11, 2006, Plaintiff filed a Motion for Summary Judgment. Both Thomley and Wilson filed separate Motions for Summary Judgment on February 15, 2007.

In an R&R dated August 14, 2007, Magistrate Judge Thomas E. Rogers, III, recommended denying Plaintiff's Motion for Summary Judgment and granting both Defendant Thomley's and Defendant Wilson's Motions for Summary Judgment. Magistrate Judge Rogers recommended granting Defendant Wilson's Motion for Summary Judgment, finding that "Wilson's actions were objectively reasonable in light of the circumstances known to him at the time of the shooting." (R&R at 9.) Furthermore, the Magistrate Judge recommended granting Defendant Thomley's Motion for Summary Judgment because Thomley has never had any supervisory authority over Wilson. (*See* R&R at 10.)

## STANDARD OF REVIEW

### A.   Magistrate Judge's R&R

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). After a review of

---

reports, [and] Medical Records Richland Memorial Hospital." (Pl.'s Resp. in Opp'n at 5.) Only the following, however, are included in the record: (1) Plaintiff's verified Complaint; (2) Thomley's Affidavit; (3) Exhibit A to Thomley's Affidavit, which is the Kershaw County Sheriff's Office Investigative Report; (4) Wilson's Affidavit; (5) the DVD of the traffic stop; (6) a Forensic Services Laboratory Report from the South Carolina Law Enforcement Division; and (7) medical records from Palmetto Health Richland.

5

the entire record, the R&R, and Plaintiff's Objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

**B.    Summary Judgment**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party 'is particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327.

## **ANALYSIS**

Plaintiff makes several objections to the R&R, most of which can be summarized as an objection to the Magistrate Judge's recommendation that Defendant Wilson's Motion for Summary Judgment be granted. Before reviewing Plaintiff's Objections, the court will first review the standards for an excessive force claim and the Magistrate Judge's reasoning.[2]

### **A.    Excessive Force Claim**

Claims that law enforcement officers used excessive force when making an arrest "should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "The standard of review is an objective one, [and t]he question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001) (citing *Graham*, 490 U.S. at 397). As the Supreme Court noted in *Graham*,

> Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *See Terry v. Ohio*, 392 U.S. [1, 22-27 (1968)]. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396 (some internal quotation marks and citations omitted). In *Tennessee v. Garner*, 471 U.S. 1 (1985), the Supreme Court held that a police officer may use deadly force when the officer has "probable cause to believe that the suspect poses a threat of serious physical harm,

---

[2]Even though the court characterizes Plaintiff's Objections as containing only one objection, the court will address all of Plaintiff's arguments.

7

either to the officer others." *Garner*, 471 U.S. at 11.

In assessing the reasonableness of a particular use of force, the court must judge reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. As the Supreme Court noted, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id*. at 396-97. Furthermore, "[t]he court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citations omitted).

**B.      Magistrate Judge's Reasoning**

In the R&R, the Magistrate Judge noted that it was undisputed that Plaintiff shot Sinkler as soon as Sinkler approached Plaintiff's vehicle and that Plaintiff fired three other shots towards Sinkler, one of which was fired only moments before Wilson arrived at the scene. (R&R at 7.) Plaintiff was still armed when Wilson arrived at the scene, and assuming that Plaintiff did not point the gun at Wilson, "the fact that Plaintiff still had the gun in his hand and had used the gun moments before to shoot Sinkler provided Wilson with probable cause to believe that Plaintiff posed a significant threat of death or serious bodily injury to Wilson or Sinkler or others." (*Id*.) The Magistrate Judge also noted that Plaintiff claimed Wilson used excessive force because Wilson shot Plaintiff after Plaintiff was already on the ground. (*See* R&R at 8.) However, the Magistrate Judge stated, "Even assuming Plaintiff's claim to be true, Wilson's justification for using deadly force against Plaintiff did not end when Plaintiff fell to the ground." (*Id*.) Lastly, the Magistrate Judge

8

stated "the fact that Wilson fired multiple shots does not render the use of force excessive." (*Id*.) Magistrate Judge Rogers thus recommended granting Wilson's Motion for Summary Judgment, finding that "Wilson's actions were objectively reasonable in light of the circumstances known to him at the time of the shooting." (R&R at 9.)

**C.     Plaintiff's Objections**

As previously noted, Plaintiff makes several objections to the R&R, but his objections can be read as one: Plaintiff objects to the Magistrate Judge's recommendation that the court grant Wilson's Motion for Summary Judgment. Plaintiff first states that he objects to the Magistrate Judge's "lack of consideration of all the documented facts presented by the Plaintiff." (Objections at 1.) Plaintiff then states, "In reviewing a Motion for Summary Judgment, under F.R.C.P. 12(b)(6), the trial court should not dismiss, unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim." (Objections at 1.) While Plaintiff has correctly articulated the standard of review for a Motion to Dismiss, *see Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999), the motions before the court are Motions for Summary Judgment. As the Supreme Court noted in *Celotex*, "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also* Fed. R. Civ. P. 56(c). Accordingly, Plaintiff's objection to the standard of review used by the Magistrate Judge is without merit.

As to Plaintiff's argument that the Magistrate Judge failed to consider the evidence Plaintiff submitted, Plaintiff specifically points to the medical and law enforcement reports he filed. As

9

previously noted, Plaintiff filed two exhibits to his Response in Opposition to Defendants' Motions for Summary Judgment. These exhibits reveal that a bullet was removed from Plaintiff's back and that Plaintiff suffered multiple fractures to his face. (*See* Pl.'s Resp. in Opp'n Exs. A and B.) According to Plaintiff, these exhibits "support the fact that Plaintiff received other injuries than gunshot wounds." (Objections at 3.) Furthermore, Plaintiff states (verbatim),

> Plaintiff has lost his left eye from other than gunshot wound, had to have his jaw reconstructed, lost his front tooth, surgery on his head. Why did these things happen, who did them. Why does Law Enforcement continue to ignore these injuries.
> Plaintiff asserts that he does have a constitutional right to be free from excessive force while being arrested, force that amounts to punishment.
> Plaintiff asserts that there are more than enough facts for the trier of facts. It is sad that the Magistrate Court has chosen to try to protect the persons responsible for these violations of Plaintiff rights, by a clear but unconvincing argument. This Court must ask one simple question how did Plaintiff get these other than gunshot injuries.

(Objections at 5.)

Plaintiff's argument that the Magistrate Judge ignored the evidence that Plaintiff had been shot in the back is without merit. The Magistrate Judge specifically addressed this evidence and stated, "Even assuming Plaintiff's claim [that Wilson shot Plaintiff in the back while he lay injured on the ground] to be true, Wilson's justification for using deadly force against Plaintiff did not end when Plaintiff fell to the ground." (R&R at 8.) The Magistrate Judge cited *Estate of Rodgers ex rel. Rogers v. Smith*, 188 Fed. App'x 175 (4th Cir. 2006), for support. In *Rodgers*, a police chase ends with a motor vehicle crash in a parking lot, and the video camera from a police car captures some of the events. *Rodgers*, 188 Fed. App'x at 178-79. The camera shows Rodgers, the subject of the police chase, falling backwards after having evidently been engaged by a police dog. *Id*. at 179. As he is falling, two muzzle flashes can be seen, and Rodgers falls to the ground, his firearm falling a few feet away from his hand. *Id*. After Rodgers is on the ground and unarmed, officers fire four

more shots. *Id*. Rodgers died from these injuries, and his Estate brought a § 1983 action against the officers. The Estate argued, *inter alia*, that even if the use of deadly force was justified at some point during the encounter, "that justification ended when Rodgers fell to the ground." *Id*. at 183. The Fourth Circuit disagreed:

> The videotape establishes that Rodgers fell to the ground, with his arms in the vicinity of his waist, no later than 1:51:08. At this time, Rodgers appears to be slightly curled up, thus presenting the top or back of his head to Officer Waters. Only two seconds later, at 1:51:10, Officer Waters fires three more shots. Importantly, although Rodgers' firearm left his hands as he fell, nothing in the record indicates that Officer Waters knew that Rodgers had dropped his weapon, and thus was no longer a threat. We conclude that on this evidence, a reasonable factfinder could only conclude that Officer Waters was acting to ensure the neutralization of a deadly threat.

*Id*.

Likening the case *sub judice* to the facts in *Rodgers*, the Magistrate Judge stated, "In the present case, the video footage reveals that approximately two seconds passed between the sixth and seventh shots fired by Wilson. As was the case in *Rodgers*, nothing in the record indicates that Wilson knew that Plaintiff had dropped his weapon or that Plaintiff was no longer a threat." (R&R at 8.) The court agrees with this analysis and further notes that not only is there no evidence in the record that Wilson *knew* Plaintiff dropped his weapon at the time Wilson fired the seventh shot, there is no evidence in the record to indicate that Plaintiff *had in fact* dropped his weapon at the time the seventh shot was fired. In addition, there is uncontroverted evidence in the record that these seven shots did not eliminate the threat to the officers. After these seven shots were fired and Wilson was attending to Sinkler, Sinkler can be heard on the DVD of the traffic stop stating that Plaintiff was moving. Wilson's affidavit indicates that after Sinkler alerted him to Plaintiff's movement, Wilson "put a foot on Plaintiff's back, pushed him back to the ground, handcuffed him"

11

and then put Plaintiff's gun in the floorboard of Wilson's car. (Wilson Aff. ¶¶ 17-18.) Plaintiff's objection that the Magistrate Judge did not consider the evidence that he had been shot in the back is thus without merit.

Plaintiff also objects to the Magistrate Judge's recommendation, asserting the Magistrate Judge did not consider the evidence that Plaintiff had injuries other than gunshot wounds. According to Plaintiff, he was not shot in the face. (*See* Objections at 2.) As previously noted, Exhibit B to his Response in Opposition to Defendants' Motions for Summary Judgment contains medical records from Palmetto Health Richland. (*See* Pl.'s Resp. in Opp'n Ex. B.) The "admission diagnosis" is "[m]ultiple gunshot wounds [to the] neck/shoulder, abdomen, [and] forearm." (*Id*.) The records also state that Plaintiff "had gunshot wounds to his abdomen, neck, orbit and forearm, per old notes." (*Id*.) The records further indicate that Plaintiff suffered multiple fractures to his face. (*Id*.)

While Plaintiff asserts the evidence he submitted reveals Wilson used excessive force on him after he was shot, the court disagrees. As a preliminary matter, Exhibit B provides contradictory evidence concerning whether Plaintiff suffered a gunshot wound to his face. Although the admission diagnosis indicates Plaintiff suffered "[m]ultiple gunshot wounds [to the] neck/shoulder, abdomen, [and] forearm," the "Hospital Course" section of the report states that Plaintiff "had gunshot wounds to his abdomen, neck, orbit and forearm, per old notes." (*Id*.)[3] However, assuming Plaintiff was not shot in the face and suffered injuries subsequent to those he suffered as a result of the seven gunshots, the court finds Wilson's actions objectively reasonable.

---

[3] The term "orbit" has been defined as "[e]ither of two bony cavities in the skull that hold the eye and its external structures." WEBSTER'S II NEW COLLEGE DICTIONARY 770 (1995).

As previously noted, the uncontroverted facts reveal that after being shot, the threat posed by Plaintiff was not abated. According to Wilson's affidavit, Wilson kicked Plaintiff's gun out of reach after Plaintiff had been shot. (*See* Wilson Aff. ¶ 15.) As Wilson was tending to Sinkler, Sinkler informed Wilson that Plaintiff was still moving. While the gun may have been out of reach of someone immobile, the evidence is undisputed that Plaintiff was in fact moving and that the gun was on the ground. Considering that Wilson knew Plaintiff had shot and injured Sinkler, that Plaintiff was moving, and that Plaintiff's gun was on the ground, the court finds Wilson's actions in using his foot to push Plaintiff back to the ground so that Wilson could handcuff Plaintiff to be objectively reasonable. (*See* Wilson Aff. ¶ 18.) In *Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001), the Fourth Circuit held that a police officer acted reasonably in firing upon Anderson, a mall patron, that the officer thought was armed with a gun; a search subsequent to the shooting revealed that Anderson was unarmed. *See Anderson*, 247 F.3d at 130-31, 128. The officer testified that he believed the patron to be armed "based upon a citizen's report that was later corroborated by [the officer's] own observation of a bulge near Anderson's waistband." *Id.* at 130. The court stated,

> The evidence establishes that immediately before [the officer] fired, Anderson was reaching toward what [the officer] believed to be a gun. Any reasonable officer in [his] position would have immediately feared for his safety and the safety of others. This Circuit has consistently held that an officer does not have to wait until a gun is pointed at the officer before the officer is entitled to take action. We have further held that an officer is not required to see an object in the suspect's hand before using deadly force. Accordingly, because [the officer] had sound reason to believe Anderson was armed, [the officer] acted reasonably by firing on Anderson as a protective measure before directly observing a deadly weapon.

*Id.* at 131 (citations omitted). In a different opinion, the Fourth Circuit stated,

> No citizen can fairly expect to draw a gun on police without risking tragic consequences. And no court can expect any human being to remain passive in the face of an active threat on his or her life. . . .[T]he Fourth Amendment does not require omniscience. Before employing deadly force, police must have sound reason

13

> to believe that the suspect poses a serious threat to their safety or the safety of others. Officers need not be absolutely sure, however, of the nature of the threat or the suspect's intent to cause them harm–the Constitution does not require that certitude precede the act of self protection.

*Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996).

Assuming Plaintiff suffered injuries not caused by gunshot wounds, the court finds Wilson's actions objectively reasonable in light of the circumstances known to him at the time he used force. Although Plaintiff's weapon may have been out of Plaintiff's reach when he fell to the ground, the uncontroverted evidence reveals that Plaintiff was moving despite having been shot. Accordingly, the court finds Wilson's use of force in order to ensure Plaintiff did not re-arm himself was objectively reasonable. As the court noted in *Anderson*, an officer is not required to wait until a gun is pointed in his or her direction before using force.

Plaintiff's last arguments in his Objections are that the Magistrate Judge (1) erred in relying on the fact that Wilson feared for his life, and (2) erred in his interpretation and application of the Fourth Amendment reasonableness standard. (*See* Objections at 2, 4.) With respect to Plaintiff's first argument, Plaintiff refers to a portion of Wilson's affidavit, which states, "The Plaintiff had the opportunity and ability to kill me, and fearing my life was in jeopardy, I opened fire on Plaintiff until he fell to the ground." (Wilson Aff. ¶ 14.) It is true that when determining whether an officer has used excessive force, the court does not "inquire into an officer's motives, intentions, or tendencies" but instead determines "'whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force.'" *Clem v. Corbeau*, 284 F.3d 543, 550 (4th Cir. 2002) (quoting *Elliott*, 99 F.3d at 642). However, contrary to Plaintiff's assertion, the court finds no error in the Magistrate Judge's application of the objective reasonableness standard. While the Magistrate Judge did note in his R&R that Wilson's affidavit indicated Wilson

feared for his life, such a notation does not indicate the Magistrate Judge relied on such a statement. On the contrary, the R&R properly stated and applied the objective reasonableness standard, determining "Wilson's actions were objectively reasonable in light of the circumstances known to him at the time of the shooting." (R&R at 9.)

Plaintiff's last argument is that the Magistrate Judge erred in his interpretation and application of the Fourth Amendment reasonableness standard. Plaintiff seems to argue the Magistrate Judge placed too much emphasis on the actions *prior* to the moment when Wilson shot Plaintiff, and according to Plaintiff, a court must focus on the moment that force was used. (*See* Objections at 4.) Plaintiff cites *Greenidge v. Ruffin*, 927 F.2d 789 (4th Cir. 1991), for support. In *Greenidge*, the Fourth Circuit upheld the lower court's decision to exclude evidence of an officer's actions "leading up to the time *immediately prior* to the shooting." *Greenidge*, 927 F.2d at 792 (emphasis added). The court stated,

> In light of the Seventh Circuit's explicit time frame requirement in determining reasonableness and the Supreme Court's focus on the very moment when the officer makes the "split-second judgments," we are persuaded that events which occurred before [the officer] opened the car door and identified herself to the passengers are not probative of the reasonableness of [the officer's] decision to fire the shot.

*Id.* Plaintiff is thus correct that the focus is on the reasonableness at the time the force is used, but the court finds no error in the Magistrate Judge's application of the standard. The Magistrate Judge noted that Wilson was aware that Plaintiff had shot Sinkler and that Plaintiff was armed when Wilson arrived at the scene. (*See* R&R at 7.) The court finds that the Magistrate Judge properly considered these facts when assessing whether Wilson's actions were objectively reasonable, given that these events occurred immediately prior to Wilson's use of force. While it is true that Plaintiff suffered serious injures as a result of the events on December 27, 2003, he is fortunate that he or

15

Officer Sinkler were not mortally wounded. Plaintiff shot and injured Sinkler and then continued to fire upon Sinkler before Wilson arrived at the scene. As Plaintiff was armed and obviously willing to fire, the court finds that Wilson's use of force on Plaintiff was objectively reasonable and wholly necessary, and that it therefore did not violate any of Plaintiff's constitutional rights. Finding Plaintiff's objections to be without merit, the court grants Wilson's Motion for Summary Judgment.[4]

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendant Wilson's Motion for Summary Judgment is **GRANTED**. It is further **ORDERED** that Defendant Thomley's Motion for Summary Judgment is **GRANTED**. It is also **ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED**.

**AND IT IS SO ORDERED**.

_PATRICK MICHAEL DUFFY_
United States District Judge

**Charleston, South Carolina**
**September 24, 2007**

---

[4] The court also grants Defendant Thomley's Motion for Summary Judgment. Plaintiff did not object to the Magistrate Judge's recommendation that Thomley's Motion for Summary Judgment be granted, and the court agrees with the Magistrate Judge that Plaintiff is unable to establish supervisory liability.